UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
JULIE CAMACHO,

                      Plaintiff,          **MEMORANDUM AND ORDER**

 - against -                                2:21-cv-1523 (DRH) (JMW)

NASSAU BOCES SCHOOL DISTRICT;
BOARD COOPERATIVE EDUCATIONAL
SERVICES OF NASSAU COUNTY (BOCES);
DR. ROBERT DILLON; DR. JAMES T.
LANGLOIS; DR. ROBERT HANNA;
LAWRENCE MCGOLDRICK; ROBERT
GREENBERG; JOHN PICARELLO; BONNIE
HELLER; DAVID KOFFLER; ANA MULLIN;
ALYSSA PARETTI; DR. RANDALL
SOLOMON; ISLAND PSYCHIATRY, P.C. and
JOHN DOE and JANE DOE # 1–10,

                      Defendants.
----------------------------------------------------------------X

**APPEARANCES**

**LAW OFFICES OF THOMAS F. LIOTTI, LLC**
Attorneys for Plaintiff
600 Old Country Road, Suite 530
Garden City, NY 11530
By:    Thomas F. Liotti, Esq.

**SILVERMAN & ASSOCIATES**
Attorneys for Defendants Nassau BOCES School District, Board Cooperative
Educational Services of Nassau County (BOCES), Dr. Robert Dillon, Dr. James T.
Langlois, Dr. Robert Hanna, Lawrence McGoldrick, Robert Greenberg, John
Picarello, Bonnie Heller, David Koffler, Ana Mullin, and Alyssa Paretti
445 Hamilton Avenue, Suite 1102
White Plains, NY 10601
By:    Caroline B. Lineen, Esq.

**BARTLETT LLP**
Attorneys for Defendants Dr. Randall Solomon and Island Psychiatry, P.C.
320 Carleton Avenue
Central Islip, NY 11722
By:    Robert Devine, Esq.

**HURLEY, Senior District Judge:**

## INTRODUCTION

Plaintiff Julie Camacho brings this action against the captioned Defendants[1] alleging seven causes of action: (1) defamation and/or defamation *per se*, (2) discrimination in violation of the New York State Human Rights Law, N.Y. Exec. Law § 296 ("NYSHRL"), (3) breach of contract, (4) negligence, (5) intentional infliction of emotional distress, (6) fraud, and (7) violation of the right to due process under the Fifth and Fourteenth Amendments, in violation of 42 U.S.C. § 1983 and Article I, § 11 of the New York State Constitution. This matter arises from the BOCES Defendants' allegedly unfair termination of Plaintiff as a result of, *inter alia*, Dr. Solomon's psychiatric examination.

Presently before the Court are the BOCES Defendants and the Solomon Defendants' motions to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1), (2), (5) and (6). For the reasons stated below, their motions are granted.

## BACKGROUND

The Court limits its recitation of facts, taken as true from the Complaint, [DE 1-1], to those pertinent to the only issue in this Memorandum and Order – namely, the statute of limitations. For a full recitation, the Court directs the reader to

---

[1] Nassau BOCES School District; Board Cooperative Educational Services of Nassau County (BOCES); Dr. Robert Dillon; Dr. James T. Langlois; Dr. Robert Hanna; Lawrence McGoldrick; Robert Greenberg; John Picarello; Bonnie Heller; David Koffler; Ana Mullin; Alyssa Paretti (collectively the "BOCES Defendants"); Dr. Randall Solomon and Island Psychiatry, P.C. (collectively the "Solomon Defendants"); and John Doe and Jane Does #1–10 (who, with the BOCES Defendants and Solomon Defendants, are the "Defendants").

Magistrate Judge James M. Wicks's thorough Memorandum and Decision granting the parties' joint motion for a stay of discovery. *See Camacho v. Nassau BOCES Sch. Dist.*, 2021 WL 4949033, at *1–2 (E.D.N.Y. Oct. 25, 2021).

Prior to her last four years as a teacher's aide at Nassau BOCES Rosemary Kennedy School, Plaintiff never received any "unsatisfactory write-ups" about her job performance. (Compl. ¶¶ 20–21). But in that four-year span, there were several complaints filed against Plaintiff by her coworkers, and, likewise, several complaints filed against them by Plaintiff; for example, in or around 2011, Plaintiff accused Defendants Alyssa Paretti and David Koffler, among others, of perpetrating a hostile work environment. (*Id.* ¶¶ 22–24, 89–93). Those in charge, including Defendant Principal John Picarello, ignored her complaints and refused her corresponding requests to transfer to another BOCES location without loss of seniority. (*Id.* ¶¶ 22, 24).

Plaintiff stood accused of "hurting a child, treating the staff poorly, giving the staff the 'silent treatment,' [] demanding the staff to give her a foot massage," and "unsatisfactory attendance." (*Id.* ¶¶ 25–26, 96; *see id.* ¶ 46 (listing charges)). Following disciplinary proceedings thereon, Plaintiff filed a complaint against Defendant Assistant Principal Bonnie Heller for "unilaterally" finding her guilty "without any investigation" and, in doing so, for "admonish[ing]" her for and "prohibit[ing] her from wearing non-latex gloves" despite her documented medical need. (*Id.* ¶¶ 25–27, 94). Plaintiff again requested a transfer to another BOCES location without loss of seniority but, ultimately, only transferred classrooms within

the school. (*Id.* ¶¶ 27–28, 98–99). Despite a new classroom, the hostile work environment allegedly persisted. (*Id.*).

During the 2013–14 school year, Defendant Assistant to the Deputy Secretary Lawrence McGoldrick held a meeting with Plaintiff and her union representative to discuss her complaints and transfer requests. (*Id.* ¶ 29). At the union representative's request, Defendants placed Plaintiff on voluntary administrative leave. (*Id.*). The Complaint does not specifically state when this meeting occurred or how long this administrative leave lasted.

On the first day of the 2014–15 school year, Plaintiff was "involuntarily placed on a second administrative leave" pending, as "commanded" by Defendant Deputy Superintendent Dr. Robert Hanna, a psychiatric evaluation. (*Id.* ¶ 30 (emphasis removed)). Defendant Dr. Randall Solomon performed the exam on October 7, 2014, which lasted approximately two hours, involved no "psychological testing," and did not require any further visits. (*Id.* ¶ 31). Dr. Solomon's written evaluation opined Plaintiff had "firmly entrenched psychological deficits" and a persisting "perspective that she has been the victim of an orchestrated campaign to harass and bully her." (*Id.* ¶¶ 32, 147). Dr. Solomon concluded:

> The risk that [Plaintiff] will continue to foster conflict in the workplace and violate appropriate teacher-student boundaries is unacceptably high. Consequently, she in not mentally fit to continue working as a [teacher's aide] in the Nassau BOCES school district.

(*Id.* (emphasis removed)).

In January 2015, Defendants charged Plaintiff with further misconduct and suspended her without pay, allegedly and "primarily as a result of" Dr. Solomon's

Page **4** of **19**

findings. (*Id.* ¶ 33, *see id.* ¶ 46 (listing charges)). The parties scheduled Plaintiff's disciplinary hearing for February 2015 but postponed it after Plaintiff allegedly "collapsed and needed surgery due to internal inflammation caused by the pain and suffering she experienced by the Defendants." (*Id.*). Although Plaintiff was ready to proceed "about three weeks [after] February 5," 2015, Defendants rescheduled the hearing for September 2015, allegedly continuing her suspension beyond "the maximum legal amount of thirty (30) days." (*Id.*). At the disciplinary hearing, Defendants "presumed [Plaintiff] to be guilty," "rush[ed] to judgment," and left her "without an opportunity . . . to be heard." (*Id.* ¶¶ 34, 50, 65–66). Defendants terminated Plaintiff in December 2015. (*Id.* ¶ 34).

Plaintiff contends her termination "irreparably harmed" her "reputation as a qualified and competent teacher's aide." (*Id.* ¶ 37). By way of example, on August 24, 2018, Plaintiff received an offer of employment as a teacher's aide; she lost it, however, on September 4, 2018 when she could not obtain full security clearance due to her disciplinary record and Dr. Solomon's report. (*Id.* ¶¶ 36–37, 43–45).

Plaintiff commenced this action on February 24, 2021 in New York State Supreme Court, Nassau County. Defendants removed the case to federal court on March 23, 2021. (*See* Notice of Removal [DE 1]). Plaintiff brings seven causes of action, only one of which by itself gives the Court jurisdiction:[2] (1) defamation and/or defamation *per se*, (2) "age, gender, religious belief, and medical condition"

---

[2] Diversity of citizenship jurisdiction is not alleged. (*See* Notice of Removal ¶¶ 3–4).

discrimination in violation of the New York State Human Rights Law, N.Y. Exec. Law § 296 ("NYSHRL"), (3) breach of contract, (4) negligence, (5) intentional infliction of emotional distress, (6) fraud, and (7) violation of the right to due process under the Fifth and Fourteenth Amendments, in violation of 42 U.S.C. § 1983 and Article I, § 11 of the New York State Constitution.

## LEGAL STANDARD

Defendants move for dismissal pursuant to Rules 12(b)(1), (2), (5), and (6). This Memorandum and Opinion addresses the statute of limitations applicable to Plaintiff's lone federal claim, which implicates only Rule 12(b)(6).

A court deciding a Rule 12(b)(6) motion to dismiss should "draw all reasonable inferences in Plaintiff['s] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks omitted). The plausibility standard is guided by two principles. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)); *accord Harris v. Mills*, 572 F.3d 66, 71–72 (2d Cir. 2009).

First, the principle that a court must accept all allegations as true is inapplicable to legal conclusions. Thus, "threadbare recitals of the elements of a cause of action supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Although "legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679. A plaintiff must provide facts sufficient to allow each named defendant to have a fair understanding of what

the plaintiff is complaining about and to know whether there is a legal basis for recovery. *See Twombly*, 550 U.S. at 555.

Second, only complaints that state a "plausible claim for relief" can survive a motion to dismiss. *Iqbal,* 556 U.S. at 679. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but asks for more than a sheer possibility that defendant acted unlawfully. Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line' between possibility and plausibility of 'entitlement to relief.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556-57) (internal citations omitted); *see In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir. 2007). Determining whether a complaint plausibly states a claim for relief is "a context specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679; *accord Harris*, 572 F.3d at 72.

**DISCUSSION**

The Court begins with Plaintiff's one federal claim, brought under 42 U.S.C. § 1983, and then addresses the exercise of supplemental jurisdiction.

**I.**     **Section 1983 and the Statute of Limitations**

Both sets of Defendants—*see supra* footnote 1—move to dismiss the § 1983 claims as untimely, BOCES Mem. at 7 [DE 20]; Solomon Mem. at 2–5 [DE 17-2]. As a threshold matter, Plaintiff correctly observes that "the statute of limitations is an affirmative defense." Pl. Opp. to BOCES Mem. at 6 [DE 21]. But where, as here, "the dates in a complaint show that an action is barred by a statute of limitations, a defendant may raise the affirmative defense in a pre-answer motion to dismiss" under Rule 12(b)(6). *Ghartey v. St. John's Queens Hosp.*, 869 F.2d 160, 162 (2d Cir. 1989); *see Thea v. Kleinhandler*, 807 F.3d 492, 501 (2d Cir. 2015) (same).

    **A.**     **The Section 1983 Limitations Period Has Expired**

The limitations period applicable to § 1983 claims is "found in the 'general or residual state statute of limitations for personal injury actions.'" *Pearl v. City of Long Beach*, 296 F.3d 76, 79 (2d Cir. 2002) (quoting *Owens v. Okure*, 488 U.S. 235, 249–50 (1989)). New York's relevant statute of limitations gives plaintiffs three years to bring such claims. *Shomo v. City of New York*, 579 F.3d 176, 181 (2d Cir. 2009). Having brought her complaint on February 24, 2021, Plaintiff's § 1983 claim must have accrued on or after February 24, 2018.

Federal law dictates when § 1983 claims accrue: "when the wrongful act or omission results in damages," *Wallace v. Kato*, 549 U.S. 384, 391 (2007) (internal

quotation marks omitted), *i.e.*, when a plaintiff knows or has reason to know of the injury serving as the basis for the claim, *see Palkovic v. Johnson*, 150 Fed. App'x 35 (2d Cir. 2005) (terminated teacher's due process claim accrued when "she knew or had reason to know that she actually would suffer deprivation" of her "constitutionally protected property interest in her tenured teaching position"); *Biehner v. City of New York*, 2021 WL 878476, at *3 (S.D.N.Y. Mar. 9, 2021) (same). Further injury later revealed does not alter the accrual date; a § 1983 "cause of action accrues even though the full extent of the injury is not then known or predictable." *Wallace*, 549 U.S. at 391 (internal quotation marks omitted); *Corcoran v. New York Power Auth.*, 202 F.3d 530, 544 (2d Cir. 1999) ("A plaintiff need not know each and every relevant fact of his injury or even that the injury implicates a cognizable legal claim. Rather, a claim will accrue when the plaintiff knows, or should know, enough of the critical facts of injury and causation to protect himself by seeking legal advice." (quoting *Kronisch v. United States*, 150 F.3d 112, 121 (2d Cir. 1998)).

Plaintiff grounds her § 1983 claim in Defendants' alleged failure to conduct "a fair and impartial assessment of [her] work at a due process hearing" and failure to protect her "from the whims and fancy of principals and/or superiors." *E.g.*, Pl. Opp. to BOCES Mem. at 4–5. Defendants allegedly brought "specious [misconduct] charges," ordered "an erroneous, unsubstantiated, and unnecessary psychiatric evaluation," and suspended her beyond "the maximum allowable amount of time." Compl. ¶¶ 33–34, 153. Each of these alleged actions occurred prior to her termination in December 2015. Thus, upon termination, Plaintiff incurred their attendant

injuries: lost earnings and "irreparabl[e] and permanent[] damage[]" to her reputation and professional career. *See id.* ¶¶ 34–35, 160.³ The limitations period then began to run.

Plaintiff knew or had reason to know of these injuries before February 24, 2018, *i.e.*, more than three years before she brought her § 1983 claim. Indeed, and although not alleged in her Complaint, she filed complaints with the New York State Division of Human Rights ("NYSDHR") immediately before and after her termination challenging both Dr. Solomon's findings and the termination hearing itself in the same manners she does here. Judicial notice of these "prior lawsuits" for "the fact that they contain certain information[,] and not for the truth of their contents," establishes Plaintiff had "actual knowledge of the facts giving rise to the action or notice of the facts, which in the exercise of reasonable diligence, would have led to actual knowledge" sufficient to start the limitations period. *See Staehr v. Hartford*

---

³ Plaintiff seems to argue the BOCES Defendants also deprived her of due process by failing to advise her of her New York Education Law § 913 rights – namely, that (i) the "district's director of school health services" or "another physician or healthcare provider" of her choice could evaluate her and (ii) a "physician or other qualified person" could accompany her to the exam. Pl. Opp. to BOCES Mem. at 8.
    These allegations are not in the Complaint and thus cannot be considered. *Fonte v. Bd. of Managers of Cont'l Towers Condo.*, 848 F.2d 24, 25 (2d Cir. 1988). Assuming Plaintiff amended her Complaint to include them, they would not affect the accrual of her § 1983 claim because, like the other allegations, they pre-date her termination; her May 2018 discovery of her Section 913 rights is inapposite to the accrual analysis. *See infra* Discussion Sections I.B–C. Moreover, "cases from both the Supreme Court and [the Second Circuit] make clear that the federal procedural due process guarantee does not require state officials to inform individuals of all the procedural guarantees they enjoy under state law." *See Liberian Cmty. Ass'n of Conn. v. Lamont*, 970 F.3d 174, 192 (2d Cir. 2020) (emphasis removed) (citing *City of W. Covina v. Perkins*, 525 U.S. 234, 240–41 (1999) and *United States v. Lopez*, 445 F.3d 90, 95 (2d Cir. 2006) (Sotomayor, J.)).

*Fin. Servs. Grp., Inc.*, 547 F.3d 406, 411, 424–26 (2d Cir. 2008) (emphasis removed) (taking judicial notice of documents in evaluating the statute of limitations). On May 11, 2015, Plaintiff filed a NYSDHR complaint assailing Dr. Solomon's evaluation and pointing to a different doctor's contrary findings. Verified Compl. ¶¶ 13–14, *Camacho v. Nassau BOCES*, No. 10174362 (N.Y.S. Div. Hum. Rts. May 11, 2015), Ex. D [DE 19-4] to Decl. of Caroline B. Lineen ("Lineen Decl.") [DE 19]. On January 15, 2016, Plaintiff—with attorney representation—amended that NYSDHR complaint to allege her termination hearing was unfair and the BOCES Defendants failed to adequately investigate her hostile work environment claims. Verified Am. Compl. ¶¶ 55–57, *Camacho v. Nassau BOCES*, No. 10174362 (N.Y.S. Div. Hum. Rts. Jan. 15, 2016) ("[T]he hearing officer carried out the will of BOCES by recommending [Plaintiff's] termination."), Ex. E [DE 19-5] to Lineen Decl. These allegations parallel those underlying her present § 1983 claim. Here, for example, Plaintiff alleges that another psychologist "refuted" Dr. Solomon's "erroneous, unsubstantiated, and unnecessary psychiatric evaluation," that she faced "fabricated and unfounded charges" at a hearing in which she was "presumed to be guilty . . . without an opportunity . . . to be heard," and that her "complaints of an increasingly hostile work environment were ignored." *E.g.*, Compl. ¶¶ 32–33, 43–45, 50, 62, 65–66, 114, 153, 159, 161. These litigation materials demonstrate Plaintiff had enough information to bring her § 1983 claim before February 24, 2018. *Cf., e.g.*, *Brodsky v. Carter*, 2015 WL 13746671, at *11 (S.D.N.Y. Dec. 15, 2015) ("[T]he fact that Brodsky began asserting [due process] claims [in state litigation] . . . almost immediately after the [alleged deprivation of

due process] shows that she was in possession of enough information to commence a [federal] lawsuit within the limitations period."), *report and recommendation adopted sub nom. Brodsky v. New York City Campaign Fin. Bd.*, 2016 WL 1258986 (S.D.N.Y. Mar. 28, 2016), *aff'd sub nom. Brodsky v. Carter*, 673 Fed. App'x 42 (2d Cir. 2016).

Plaintiff contends her claim is timely because her harm "is continuing as a result of having to disclose" to future employers her disciplinary charges and Dr. Solomon's evaluation, such as when she did so in September 4, 2018. Compl. ¶¶ 36–37, 47–48, 154. Plaintiff's resort to the continuing violation doctrine falls short, however.[4] Later-manifesting injuries do not necessarily signal the presence of a continuing violation. *Smith v. City of New York*, 664 Fed. App'x 45, 47 (2d Cir. 2016) (quoting *Wallace*, 549 U.S. at 391). A continuing violation "is not established merely because an employee continues to feel the effects of a discriminatory act on the part of the employer." *Lightfoot v. Union Carbide Corp.*, 110 F.3d 898, 907–08 (2d Cir. 1997). The Second Circuit has affirmed dismissals pursuant to the statute of limitations and the inapplicability of the continuing violation doctrine in analogous fact patterns – namely, where the reasons for and collateral effects of an employee's

---

[4] The continuing violation doctrine applies to claims "composed of a series of separate acts that collectively constitute one unlawful practice" – *i.e.*, "claims that by their nature accrue only after the plaintiff has been subjected to some threshold amount of mistreatment" and not "discrete unlawful acts." *Lucente v. Cnty. of Suffolk*, 980 F.3d 284, 309 (2d Cir. 2020) (ellipses, internal citations, and internal quotation marks omitted). Such claims accrue not on "the normal knew-or-should-have-known" date but "when the defendant has engaged in enough activity to make out an actionable claim." *Id.* "The continuing violation doctrine is generally viewed with disfavor in the Second Circuit and should be applied only on a showing of compelling circumstances." *Bissinger v. City of New York*, 2007 WL 2826756, at *5 (S.D.N.Y. Sept. 24, 2007) (citing cases).

termination stymie future employment opportunities. *E.g.*, *Smith*, 664 Fed. App'x at 47 (continuing violation inapplicable where plaintiff alleged "continuing retaliation in the form of his placement on [defendant's] 'no hire list'" because it was not a "separate act" but "a direct consequence of [plaintiff's] termination"); *Brevot v. New York City Dep't of Educ.*, 299 Fed. App'x 19, 20 (2d Cir. 2008) (plaintiff's placement on "ineligible list," even if it still "keep[s] her unemployable in her chosen profession," was a "consequence of acts" completed in six years prior and was not a continuing violation).

### B. The May 2018 Events Do Not Change the Outcome of the Statute of Limitations Analysis

Plaintiff next argues her § 1983 claim is timely because, in May 2018, she "learned" that "[a]nother similarly situated teacher" testified at a colleague's disciplinary arbitration proceeding that she (like Plaintiff and the colleague) was "forced to see Dr. Solomon," who found her (like the others) mentally unfit. Pl. Opp. to BOCES Mem. at 4–5. Only after the arbitrator found the colleague "not guilty" on May 3, 2018 did Plaintiff "first discover[] and [become] aware of the fraud and deceit of the Defendants": that the BOCES Defendants hired, and "pa[y] under the table," Dr. Solomon to recommend terminating employees as "'unfit' regardless of whether they are actually unfit." *Id.* at 4–5, 9.

But she does not recount these May 2018 events in her Complaint. "Factual allegations contained in legal briefs or memoranda are [] treated as matters outside the pleading for purposes of Rule 12(b)." *Fonte v. Bd. of Managers of Cont'l Towers Condo.*, 848 F.2d 24, 25 (2d Cir. 1988). The Court may not "consider matters outside the pleadings in deciding a motion to dismiss for failure to state a claim." *Nakahata v. New York-Presbyterian Healthcare Sys., Inc.*, 723 F.3d 192, 202 (2d Cir. 2013).

And, in any event, the quoted portions of the arbitrator's Opinion and Award do not read in the manner Plaintiff suggests, *i.e.*, that the BOCES Defendants pay Dr. Solomon to find educators mentally unfit. Pl. Opp. to BOCES Mem. at 5–8. The only quote relating to payment comes from a paragraph summarizing the colleague's arbitration position—not the arbitrator's findings—as made clear by its citations to "Respondent's Brief" and the qualifying clause "Respondent submits."[5] In what is ostensibly the arbitrator's findings, he fails to say anything about payment. And nothing in the arbitrator's words permits an inference that he "recognized the fraud

---

[5] The block quote, as lifted from Plaintiff's brief, reads:

> BOCES 'improperly' retained the services of Dr. Solomon who never 'bid for his work.' (*Respondent Brief* at 13). Alleging a violation of a local ordinance, *Respondent submits* that 'public money' was improperly 'spent without any budgetary line, no bidding and no accountability,' which resulted in two evaluations with 'no oversight, guidance or accountability.' (*Respondent Brief* at 15-17).

Pl. Opp. to BOCES Mem. at 5 (citations in original) (emphasis added); *see id.* at 13 (quoting the paragraph, again, to say the arbitrator "recognized" Dr. Solomon's "fraud and deceit").

and deceit of Dr. Solomon" alleged by Plaintiff. It says only that Dr. Solomon's conclusion as to the colleague did not follow from the evidence presented to him.[6]

Assume, *arguendo*, Plaintiff's reading is correct and she amends her complaint to allege these May 2018 events. The statute of limitations still bars her claims. *Manning v. Utilities Mut. Ins. Co.*, 254 F.3d 387, 401 (2d Cir. 2001) ("Even if we were to consider the factual allegations presented in plaintiff's briefs, we would find that, as a matter of law, plaintiff's claim [would not] survive the six-year statute of limitations . . . ."); *Gatt Commc'ns, Inc. v. PMC Assocs., L.L.C.*, 711 F.3d 68, 71 n.2 (2d Cir. 2013) (treating facts raised in motion papers "as if they had been included in a second amended complaint" and concluding "even as so amplified, [plaintiff] has failed to state a claim upon which relief can be granted"). As noted, Plaintiff's claim accrued well before May 2018. And these previously discussed 2018 events do not alter the continuing violation analysis: "several courts have held that an employee

---

[6] Plaintiff's third and final block quotation of the arbitrator's decision reads:

> Herein, BOCES relies on Dr. Solomon's opinion that Respondent poses a significant risk to her students, because . . . . Yet, there is no evidence that Respondent's job performance was impaired, and no such evidence was presented to Dr. Solomon. Indeed, Dr. Solomon saw no documentation that Respondent's 'work performance was less than acceptable,' and he knew of no 'instances of her work performance being subpar.' (Tr. 177-178) . . . .
>
> . . . . Dr. Solomon also confirmed that Respondent's classroom performance did not trigger her Education Law § 913 evaluation; rather, BOCES expressed concern that Respondent had filed an 'excessive' number of workers' compensation claims (Tr. 54), which undoubtedly presented a real challenge for BOCES.

Pl. Opp. to BOCES Mem. at 5 (ellipses and citations in original). The ellipses in the above block quote are supplied by Plaintiff. The unabridged language is not in the materials presented to the Court.

who has been discharged pursuant to a discriminatory policy may not take advantage of later discriminatory acts against other employees for the purpose of postponing the running of the statutory period as to [her] on a continuing violation theory." *Miller v. Int'l Tel. & Tel. Corp.*, 755 F.2d 20, 25 (2d Cir. 1985) (citing cases); *cf. Pinaud v. Cnty. of Suffolk*, 52 F.3d 1139, 1157 (2d Cir. 1995) ("[W]hen a plaintiff knows or ought to know of a wrong, the statute of limitations on that claim starts to run, and the later awareness that the actionable wrong was also part of a conspiracy does not expand the statutory time limit.").

### C. Equitable Tolling Does Not Apply

Plaintiff "avails [herself] of the doctrine of equitable tolling," contending "her [§ 1983] cause of action [was] fraudulently concealed" until May 2018. Pl. Opp. to BOCES Mem. at 7–8. State law provides such "tolling rules." *Pearl*, 296 F.3d at 80 (quoting *Hardin v. Straub*, 490 U.S. 536, 539 (1989)). New York tolls the statute of limitations both (i) "where the defendant conceals from the plaintiff the fact that he has a cause of action," and (ii) "where the plaintiff is aware of his cause of action, but the defendant induces him to forego suit until after the period of limitations has expired." *Id.* (internal quotation marks omitted). Neither of these circumstances apply here.[7]

First, and according to the Second Circuit's view of New York's tolling rules, there is a distinction "between fraudulent concealment of the existence of a cause of

---

[7] New York State law characterizes its tolling rules as "equitable estoppel," *see Pearl*, 296 F.3d at 81–83, but this Memorandum and Opinion uses the terminology employed by the parties: "equitable tolling."

action and fraudulent concealment of facts that, if known, would enhance a plaintiff's ability to prevail as to a cause of action of which the plaintiff was previously aware." *Id.* at 76, 84–85 (citing *Saylor v. Lindsley*, 391 F.2d 965, 970 (2d Cir. 1968)). The latter situation, to which the May 2018 events belong, does not warrant equitable tolling. The alleged "fraud and deceit" between the BOCES Defendants and the Solomon Defendants, if established, would merely "enhance [Plaintiff's] ability to prevail" on the subject claim "by corroborating her story." *See id.* (quoting *Paige v. Police Dep't of Schenectady*, 264 F.3d 197, 200 (2d Cir. 2001)). Plaintiff was previously aware that Dr. Solomon's involvement contributed to her alleged due process deprivation because she argued that very point in state court. She may not have "possess[ed] of all information necessary to prevail in [that] lawsuit," but, as a matter of law, she "need[ed] only [to] have possessed information that would have allowed [her] to bring a lawsuit" in federal court. *Statler v. Dell, Inc.*, 841 F. Supp. 2d 642, 648 (E.D.N.Y. 2012); *Torre v. Columbia Univ.*, 1998 WL 386438, at *8 (S.D.N.Y. July 10, 1998) ("[E]quitable tolling is intended to provide relief where a plaintiff is not aware of the existence of a cause of action, not where a plaintiff is aware of the cause of action but believes that she may not have sufficient evidence to prove her case."), *aff'd*, 189 F.3d 462 (2d Cir. 1999).

Second, Plaintiff fails to suggest Defendants affirmatively "induced [her] by fraud, misrepresentations or deception" to delay filing her § 1983 claim. *Twersky v. Yeshiva Univ.*, 993 F. Supp. 2d 429, 442 (S.D.N.Y.) (quoting *Zumpano v. Quinn*, 6 N.Y.3d 666, 673–75 (N.Y. 2006)), *aff'd*, 579 Fed. App'x 7 (2d Cir. 2014)). Equitable

tolling requires "some conduct on the part of the defendant after the initial wrongdoing; mere silence or failure to disclose the wrongdoing is insufficient." *De Sole v. Knoedler Gallery, LLC*, 974 F. Supp. 2d 274, 319 (S.D.N.Y. 2013) (quoting *Ross v. Louise Wise Servs., Inc.*, 8 N.Y.3d 478, 491–92 (N.Y. 2007)). To establish fraudulent concealment of a claim, Plaintiff "may not rely on the same act that forms the basis for" her claim. *Ross*, 8 N.Y.3d at 491. By grounding the fraudulent concealment in the later-discovered, allegedly-illicit relationship between the BOCES Defendants and the Dr. Solomon—which serves as a basis for her § 1983 claim—she offers no "later fraudulent misrepresentation . . . for the purpose of concealing" that alleged tort. *See id.*

All this to say, even taking into account the May 2018 events, Plaintiff's § 1983 claim is time-barred.[8]

## II. Supplemental Jurisdiction over the State Claims

Defendants' Notice of Removal invokes federal question jurisdiction as the basis of removal. Notice of Removal ¶¶ 3–4 (citing 28 U.S.C. § 1331). With the § 1983

---

[8] Paragraph 158 of the Complaint quotes *Monell v. Department of Social Services*'s standard for municipal government liability under § 1983. Compl. ¶ 158 (quoting 436 U.S. 658 (1978)). Referring to her termination, based in part on Dr. Solomon's findings, she contends, "[t]he actions and statements of these Defendants are indicative of a pattern of [] behavior in order to justify terminating educational employees from their position." *Id.*

Plaintiff's municipal liability claim is timely only if the Court construes the Complaint to include the May 2018 events, as the actions giving rise to her § 1983 claim pre-date the commencement of the action by more than three years. *See Pinaud*, 52 F.3d at 1156. The Court does not do so. The May 2018 events do not support Plaintiff's § 1983 municipal liability claim. The arbitrator's opinion does not corroborate the asserted unconstitutional policy or custom. *See supra* footnotes 5–6 and accompanying text.

claim dismissed as to all Defendants, each of the remaining claims come under New York State law. Under the circumstances, the Court declines to exercise supplemental jurisdiction over the state law claims. *Kolari v. N.Y.-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988)). They shall be remanded back to state court. *See* 28 U.S.C. § 1367(c)(3); *e.g.*, *Boyle v. N. Salem Cent. Sch. Dist.*, 2020 WL 2319116 (S.D.N.Y. May 11, 2020).

## CONCLUSION

For the reasons discussed above, the BOCES Defendants' and the Solomon Defendants' motions to dismiss are granted. The Clerk of Court is respectfully directed to remand the action to the Supreme Court of the State of New York, Nassau County.

**SO ORDERED.**

Dated: Central Islip, New York          s/ Denis R. Hurley
       January 27, 2022               Denis R. Hurley
                                                   United States District Judge